UNITED STATES, Appellee

v

PATRICK M. RYAN, Private First Class, U. S. Marine Corps, Appellant

21 USCMA 9, 44 CMR 63

No. 23,718

July 16, 1971

 

*Lieutenant Arthur H. Rainey,* JAGC, USNR, argued the cause for Appellant, Accused. With him on the brief was *Lieutenant Allen D. Black,* JAGC, USNR.

*Lieutenant James B. Ginty,* JAGC, USNR, argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Charles J. Keever,* USMC, and *Commander Michael F. Fasanaro, Jr.,* JAGC, USN.

## Opinion of the Court

QUINN, Judge:

The accused challenges his conviction for wrongful possession of marihuana at Camp Lejeune, North Carolina, on the ground that trial counsel's closing argument was prejudicially improper.

In the main, the Government's case depended upon the testimony of Corporal Brauns and Lance Corporal Sullivan, close friends and informants for the Naval Investigative Service. According to Brauns, the accused solicited him to buy marihuana; the next day, he and Sullivan went to the accused's room where they received the marihuana. The accused denied the transaction. In an apparent effort to account for the testimony against him, he said that earlier he had had a fight with Brauns in which he had succeeded in overpowering him; he then told Brauns to stay away from him. Shortly thereafter, Brauns moved to another barracks.

To strengthen his own credibility and discredit that of Brauns, the accused called almost a score of enlisted persons to testify to Brauns' and his reputation for veracity. Largely, the witnesses described Brauns as a "liar," "brown-nosing," "fantasy man," and the accused as a person of good character. Stipulated testimony from others who knew the accused in his hometown, including the chief of police, was favorable to him. In rebuttal, the Government called five witnesses, who expressed confidence in the truthfulness of Brauns and Sullivan and rejected the credibility of many of the defense witnesses.

Before the United States Navy Court of Military Review, appellate defense counsel cited twenty-three instances of unfair and improper argument by trial counsel. The assignments ranged from the impermissible assertion of a personal belief in the credibility of the Government witnesses (see Gibson v United States, 403 F2d 569, 570, footnote 1 (CA DC Cir) (1968)) to an attempted explanation for the absence of Naval Investigative Service agents from the scene of the sale that had no support in the evidence. See United States v Pendergrass, 17 USCMA 391,

394, 38 CMR 189 (1968). One of the major criticisms was addressed to the following portion of trial counsel's remarks:

". . . Now who are going to believe? Are you going to believe United States Marine Corps, field grade officers, or are you going to believe, let's say, Lance Corporal SCHARFERBERGER, now he was a good one. Lance Corporal SCHARFERBERGER, I have never seen a more incredible witness. I've never seen one who lacked so much credibility, who mumbles on the stand, why it's doubtful what he was on today. . . . The defense witnesses are lying, gentlemen. You have had some lying down here today by the defense witnesses and the accused, they are all liars, that's essentially what it is. They have a motive to falsify their testimony, but do you think BRAUNS and SULLIVAN do? . . . Again I say it takes a while to establish proof beyond a reasonable doubt, but it can be done and it was done. We had to do it the dirty way, so to speak, to show that other people are lying, this is what we did. But you've got to do it, it's an affirmative duty. You've got to show they are lying when they are lying. And I submit to you that they have a motive to lie in this case, the defense witnesses. . . . I don't think I will ever forget SCHARFERBERGER gentlemen, among others, and I don't think I will forget JACKOWSKI's performance on the stand. I think it is an affront to the judicial system to bring witnesses like that into the courtroom. Now who are you going [to] believe? Consider Lieutenant GOODELL's testimony. A U.S. Marine Corps officer under whom BRAUNS worked, think he was lying? No, he wasn't. BRAUNS worked directly under him. Think top FOWLER was lying? No, he wouldn't believe the accused. If anyone is in a position to assess his credibility it's his company First Sergeant who has daily contact with him. You gentlemen see him one time in here. You take someone who sees him with daily contact and consider that fact. I submit to you the defense witnesses are incompetent and incapable of being believed. . . ."

A unanimous Court of Military Review concluded that trial counsel had "transcended the bounds of fairness." It determined that his assertions of personal opinion were "clearly unwarranted," and that "nothing in the record" justified certain aspects of his argument. However, the court reasoned that the risk of prejudice was insubstantial because defense counsel had not objected and the judge had instructed the court-martial members to "bear in mind that arguments of counsel are not evidence" and that they were not required "to attach" to counsel's statements "any more importance than . . . [their] own recollection of the evidence compels."

The failure of defense counsel to object to the prosecutor's argument may indeed indicate that he did not regard the argument "as egregiously improper." United States v Wood, 18 USCMA 291, 293, 40 CMR 3 (1969). Defense counsel's apparent interpretation is not, however, conclusive of the matter. While it constitutes a "persuasive inducement" to evaluate the prosecutor's argument as appropriate and proper (Id., page 293), the trial judge must himself determine the nature and effect of the argument upon the court members, especially if the circumstances may indicate that objection might reflect unfavorably upon the defense. Garris v United States, 390 F 2d 862, 865 (CA DC Cir) (1968); see also United States v Walters, 4 USCMA 617, 631, 16 CMR 191 (1954). Here, as the Court of Military Review pointed out, the erroneous nature of trial counsel's argument was plain. At least part of the argument was, in our opinion, so pernicious and presented so strong a risk of prejudice as to have required the trial judge to stop it and directly and emphatically instruct the court members to disregard it.

Certainly, the law does not treat all witnesses equally. The testimony of an accomplice, for example, be ■ cause of his status alone, ■ is "of questionable integrity and is to be considered with great caution." Manual for Courts-Martial, United States, 1969 (Revised edition), paragraph 153a, page 27–65; United States v Scoles, 14 USCMA 14, 18–19, 33 CMR 226 (1963). In other instances, credibility and reliability may be inferred from the individual's calling or conduct. See United States v Davenport, 14 USCMA 152, 158–159, 33 CMR 364 (1963), dissenting opinion, Chief Judge Quinn. In such situations, experience provides the predicate for the rule of caution. No doubt an inference of reliability and truthfulness may properly be drawn from the fact that an individual has had such long and dedicated service in an armed force as to merit promotion to high rank. That inference, however, cannot, in our opinion, be elevated to a legal axiom that the degree of rank carries a corresponding degree of credibility. Yet, that is the idea implied in the quoted portion of trial counsel's argument; and that idea was uncorrected by the trial judge.

The greater rank of a witness does not in and of itself import greater credibility over witnesses of lesser rank. Since the evidence demonstrated a substantial difference in rank between the Government witnesses and the defense witnesses, compliance with the judge's instruction "to attach" such importance to counsel's argument as the court members' "recollection of the evidence compels" would unmistakably lead them to accord greater weight to the testimony of the Government witnesses because those witnesses had greater rank. See United States v Adams, 5 USCMA 563, 570, 18 USCMA 187 (1955). We conclude that the instruction aggravated, rather than lessened, the risk of prejudice from trial counsel's erroneous argument.

The decision of the Court of Military Review is reversed, and the findings of guilty and the sentence are set aside. A rehearing may be ordered.

Senior Judge FERGUSON concurs.

DARDEN, Chief Judge (dissenting):

While some of trial counsel's argument was of doubtful propriety, reversal is not automatic. The passages complained of must amount to prejudicial error. United States v Hickman, 10 USCMA 568, 28 CMR 134 (1959), and United States v Wood, 18 USCMA 291, 40 CMR 3 (1969). The comments here in issue must not have concerned defense counsel, as they did not object to any of them. The principal defense counsel was not a novice. Instead, he was a private practitioner who referred to his having been a staff legal officer during his twenty-seven years of active duty.

Moreover, the military judge cautioned the court members:

". . . You have just heard an exposition of the facts by counsel for both sides as they view them. But you must bear in mind that arguments of counsel are not evidence. Argument is made by each side to help you in understanding and weighing the evidence and should be regarded by you as such. However, you are not required to give their statements any further credence or to attach to them any more importance than your own recollection of the evidence compels. . . . It is your own independent recollection of the evidence that you must rely upon when determining the facts of the case."

The combination of the cautionary instruction by the military judge and the failure of experienced defense counsel to object to the argument causes me to conclude that the argument was not so inflammatory and prejudicial that we must reverse. United States v Benson, 389 F2d 376 (CA6th Cir) (1968), and the cases cited there.