UNITED STATES, Appellee

v

LAWRENCE PINKNEY, Private E-2, U. S. Army, Appellant

*Captain John T. Willis* argued the cause for Appellant, Accused. With him on the brief were *Colonel Arnold I. Melnick,* and *Captain William X. Parsons.*

*Captain Richard A. Karre* argued the cause for Appellee, United States. With him on the brief were *Lieutenant Colonel Donald W. Hansen, Lieutenant Colonel Ronald M. Holdaway, Major Thomas P. Burns, III, Captain M. Douglas Deitchler,* and *Captain Lawrence D. Martin.*

## OPINION OF THE COURT

Duncan, Chief Judge:

 Prior to the trial in this case, the accused submitted a request for discharge in lieu of court-martial under the provisions of Chapter 10, AR 635-200, April 19, 1972. This is an administrative procedure available to all Army personnel under criminal charges which permits them to be separated from the military service, possibly under other than honorable conditions, rather than to be subjected to trial by court-martial for offenses against the Uniform Code of Military Justice. Only an accused can initiate the request for discharge, and the Government has no obligation to act favorably upon it because the right to refer criminal charges against the accused for trial by court-martial is reserved to the convening authority who may deny the request for discharge. Needless to say, an accused need not incriminate himself when he requests discharge in lieu of court-martial, and a convening authority does not necessarily express a personal opinion on guilt or innocence or on the appropriateness of any punishment other than the requested discharge when he denies such a request. The discharge in lieu of court-martial plays an important, though minor, role in the disposition of criminal offenses in the military service. We do not conceive it to be our function to review the merits of the practice. Nevertheless, when an accused seeks to avail himself of this administrative means to dispose of the criminal charges against

him, no harm should come to him as a result of the failure to so resolve the case by administrative discharge rather than criminal trial.

The problem in this case was created when the military jury learned that the accused had unsuccessfully requested a discharge in lieu of court-martial. Because this court-martial was empowered to adjudge a punitive discharge as part of the sentence, the accused's intentions with respect to his military service were obviously of interest to the court-martial members. After conviction, the accused took the stand to give evidence relevant to sentencing. His testimony included a brief recitation of his family and educational background, and his military assignments. Mention was also made of the fact that he and his co-accused had made restitution for the larceny involved in the case. Contrary to the typical allocution at a court-martial, no mention was made of a desire to complete a career in the Army or of a pledge to earn an honorable discharge if returned to duty. On cross-examination, however, the trial counsel led the accused into these areas by asking if he had ever wanted to get out of the service before his term of service expired, and whether he had always wanted an honorable discharge. When the accused answered that he had always wanted to finish his time and get an honorable discharge, the trial counsel impeached his testimony by questioning him about his request for a Chapter 10 discharge. Subsequently, in his argument to the court-martial before sentencing, the trial counsel referred to the accused's lack of concern about staying in the Army and his willingness to accept an undesirable discharge. The trial defense counsel did not object to either the cross-examination or the argument of the trial counsel. No cautionary instructions about this matter were given by the military judge.

When this case was reviewed by the U.S. Army Court of Military Review, the court held that it was error for the trial counsel to interject the Chapter 10 action into the case. The Court of Military Review compared the trial counsel's actions to informing a court-martial about a pretrial agreement, United States v Massie, 45 CMR 717 (ACMR 1972), or the concessions made in connection with a former attempt to plead guilty, United States v Daniels, 11 USCMA 52, 28 CMR 276 (1959), or the convening authority's views on the seriousness of a case, United States v Crutcher, 11 USCMA 483, 29 CMR 299 (1960). These cases all held that it was error to inject these collateral matters into a trial. Nevertheless, the Court of Military Review declined to grant relief on the grounds that the trial defense counsel failed to object at trial to the cross-examination and argument of the trial counsel.

We granted review in this case on the following issue:

Whether the appellant was materially prejudiced by the trial counsel's improper cross-examination during extenuation and mitigation in which the convening authority's pretrial refusal to grant a discharge for the good of the service was made known to the court members, particularly in light of the trial counsel's subsequent argument on sentence which made reference to the request for administrative discharge and also in light of the military judge's failure to provide any limiting instruction regarding the court members' consideration of the matter.

On the underlying issue of the trial counsel's error in introducing the subject of the administrative discharge request into his cross-examination of the accused before sentencing and then including this topic in his presentencing argument, we are in accord with the decision of the Court of Military Review. We agree that "[a] rule which attaches the possibility of future detriments to an accused's entering into negotiations about the disposition of charges is not a good rule for administering criminal law." An accused and his defense counsel who search out administrative alternatives to trial for the disposition of criminal charges, or who bargain in good faith about concessions in return for a plea of guilty, should be assured that their pretrial legal maneuvers will not later be used against the accused for any purpose. So long as military law makes provisions for plea bargaining and dis-

**22 USCMA 597**

charges in lieu of court-martial, the legitimate use by the defense of these parts of military law providing alternatives to trial is antithetical to any attempt by the prosecution to turn their use against the accused.

■ Normally, at a trial where the prosecution attempts to use the unsuccessful pretrial legal moves of the defense against an accused, the defense counsel should be expected to protect the legal interests of the accused by requesting the trial judge to stop the prosecution from presenting such evidence to the jury and to caution the jury against considering such evidence as they may have heard. In this case, however, the trial defense counsel did not object to the trial counsel's cross-examination of the accused or to his argument before sentencing. Because of this inaction by trial defense counsel, the Court of Military Review granted no relief to the accused from the error of presenting his pretrial request for an administrative discharge to the military jury which sentenced him. The Court of Military Review applied the ordinary rule that "failure to object at trial does away with any necessity for military appellate courts to take cognizance of an error." It is this ruling that is principally at issue before this Court.

The appellant has advanced three arguments why the doctrine of waiver should not be applied to the defense counsel's failure to object at trial to the prosecution raising the matter of the request for discharge in lieu of trial. First, the argument is made that the trial counsel's actions indirectly informed the court-martial of the convening authority's desire that the accused should be sentenced to "confinement and punitive elimination" from the service. If so, command influence or command control would have been interjected into the case, and as a consequence waiver of the error would be inappropriate under United States v Lackey, 8 USCMA 718, 25 CMR 222 (1958). Secondly, the appellant argues that the gravity of the error in this case warrants relief despite the waiver in order to prevent manifest injustice from the irreparable consequences of a punitive discharge. Lastly,

the error below should be held not waived because the legal issue involved had never before been ruled upon by a military appellate court.

■ A rule which would grant relief from a failure to object at trial should not be founded upon the mere fact that the legal issue at hand had or had not been the subject of a prior judicial opinion binding upon the trial court. The lack of a case on point does not exempt counsel from evaluating the legal issues in a trial as they develop, according to generalized principles of law. In an adversary system a rule rewarding nonfeasance would encourage a party to forego litigating the issue at trial in the expectation that he might win a rehearing on the error if the first trial went against him. No, the reason for requiring prompt objection at trial is to give the court an opportunity to correct an error then and there, and thus avoid further costly proceedings. If the objectionable matter can be rendered unobjectionable by additional explanation or evidence, or if the trial judge can neutralize the damage by cautionary instructions, the failure to object deprives the trial court of these opportunities to protect the trial from reversible error. There are, of course, times when the trial judge himself must intercede on his own motion to preserve the trial from error, United States v Ryan, 21 USCMA 9, 44 CMR 63 (1971), but this is not such a case. The failure to object in this case, therefore, cannot be excused by reason of the fact that the objectionable evidence was without recorded legal precedent.

■ Relief from the consequences of the trial defense counsel's failure to object to the discharge in lieu of trial matters is also requested on the grounds that manifest injustice to the appellant would otherwise result. The appellant argues that a punitive discharge based upon objectionable evidence constitutes such irreparable injury that denying relief would be a fundamental injustice. This argument might be plausible in a case where the only evidence, or the most important evidence, relevant to the sentence concerned an unsuccessful effort to seek an administrative discharge in lieu of trial. In this case, however, the gravity of the offenses of larceny and housebreaking,

and the existence of a prior conviction for an extended unauthorized absence, lead us to conclude that the sentence to a punitive discharge was only slightly affected, if at all, by knowledge on the part of the court members that the accused would have traded an undesirable discharge for a court-martial on serious charges. It appears to us that no more than a mere possibility exists that a rehearing on sentence would result in a sentence which does not include a punitive discharge. Such a small likelihood of a lesser sentence on rehearing simply does not amount to such a miscarriage of justice to warrant relieving the defense of its failure to pursue the matter at trial.

■ Lastly, the appellant argues that the trial counsel's actions had the effect of advising the court-martial members of the convening authority's desires regarding the sentence they should impose. Command control or influence should allow the normal rule of waiver to be lifted from the defense. Authority for such a proposition is found in United States v Lackey, supra, which declined to hold waiver for failure to object where the trial counsel argued to the court-martial that " 'the people who brought these charges and referred him to trial thought it was your responsibility to see that Private Lackey was put out of the service and . . . with a punitive discharge.' " *Id.* at 719, 25 CMR at 223. Similarly, waiver was not employed in United States v Fowle, 7 USCMA 349, 22 CMR 139 (1956), where the trial counsel argued during the presentencing proceedings for implementation of a Navy policy of separating from the service persons who were convicted of larceny or other offenses involving moral turpitude. In both *Lackey* and *Fowle,* the members of the courts-martial were confronted with arguments that specifically referred to the desires of the convening authority for a punitive discharge or to Navy policy on the Secretarial level directed to separating thieves from the service. These cases involved command influence which was direct and unambiguous, and which could not be cured "by the simple expedient of having the president or law officer remind the members of the court that they are not bound by the policy declaration." United States v Fowle, supra at 352, 22 CMR at 142. We do not construe the trial counsel's argument in this case to be a direction from the convening authority through the trial counsel to the members of the court-martial that the accused should be punitively separated from the service. The denial of a discharge in lieu of trial is a neutral act insofar as guilt or innocence, or the appropriateness of a sentence, is concerned. Obviously it may be interpreted to mean that the commander denying the request believed administrative separation was inappropriate under the circumstances, but it may also indicate no more than a commander's belief in the efficacy of the court-martial system.

The decision of the U. S. Army Court of Military Review is affirmed.

Judge QUINN concurs.

Senior Judge FERGUSON did not participate in this case.